## *In re* RANKIN

Docket No. 107932. Submitted November 1, 1988, at Grand Rapids. Decided March 6, 1989. Leave to appeal applied for.

In July, 1985, Tony Rankin and Nancy Cline, natural parents of Misty Marie Rankin, petitioned the Muskegon County Probate Court to appoint James and Merry Grieve as limited guardians of Misty pursuant to the provision in the Revised Probate Code permitting such limited guardianships upon consent of the parents or the consent of the parent having custody. The petition was granted and the Grieves became Misty's guardians. In June, 1987, petitioners filed with the probate court a petition to terminate the guardianship. The probate court, Thomas H. Linck, J., found that parental consent had been withdrawn and that, accordingly, the lack of parental consent required the court to terminate the guardianship. The Grieves appealed to the Muskegon Circuit Court. The circuit court, Ronald H. Pannucci, J., reversed, holding that, even though parental consent is necessary to create the limited guardianship, withdrawal of parental consent did not mandate termination of the guardianship, but rather a petition for termination of such a limited guardianship was addressed to the discretion of the court and must be decided only upon consideration of the best interests of the child. Petitioners appealed by leave granted.

The Court of Appeals *held:*

Withdrawal by the parents of a minor child of their consent to a limited guardianship of that child under the provision of the Revised Probate Code permitting limited guardianship upon consent of the parents acts to terminate the guardianship under that provision. Accordingly, it was error for the circuit court to reverse the probate court's order terminating the guardianship.

Reversed.

R. I. COOPER, J., dissented. He would hold that the language of the provision creating limited guardianship upon parental

REFERENCES

Am Jur 2d, Guardian and Ward § 54 *et seq.*

See the Index to Annotations under Guardian and Ward.

consent clearly provides that such guardianship may be terminated upon petition of the parents, thereby indicating a legislative intent that termination of the guardianship is not automatic upon the withdrawal of parental consent but is rather addressed to the court's discretion.

GUARDIAN AND WARD — PARENTAL CONSENT — TERMINATION OF
      CONSENT — REVISED PROBATE CODE.

      Withdrawal of parental consent to the guardianship of a child where the guardianship was created pursuant to a provision of the Revised Probate Code which permits the creation of such guardianships upon the consent of the parents acts to terminate that guardianship (MCL 700.424a; MSA 27.5424[1]).

*Bruce Krueger,* for petitioners.

*Persinger & Farmer, P.C.* (by *Floyd A. Farmer, Jr.*), for respondents.

*Gerald W. Gibbs,* Guardian ad litem.

Before: WAHLS, P.J., and McDONALD and R. I. COOPER,* JJ.

McDONALD, J. Petitioners appeal by leave granted from the March 21, 1988, circuit court order reversing the November 9, 1987, probate court order terminating respondents' guardianship over the minor child, Misty Rankin. We reverse.

On July 29, 1985, Nancy Cline and Troy Rankin, the natural parents of the minor Misty Rankin, petitioned the probate court to appoint respondents the limited guardians of Misty pursuant to § 424a of the Michigan Revised Probate Code, MCL 700.424a; MSA 27.5424(1). Petitioners were represented by counsel throughout the guardianship proceedings.

Respondents without objection cared for and remained the minor's guardians for approximately two years. However, on June 26, 1987, petitioners

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

filed a petition with the probate court to terminate the guardianship. Following a hearing on the motion, the probate court issued a September 24, 1987, written opinion in which it found the case limited to the sole issue whether the Rankins had withdrawn consent to the limited guardianship. Finding that consent had been withdrawn, the probate court terminated the guardianship. As the limited guardianship provided the vehicle under which the probate court acquired jurisdiction over the minor, and the establishment of a limited guardianship under § 424a requires the consent of the parents, the probate court found that withdrawal of this consent required the court to terminate the guardianship, which resulted in a loss of jurisdiction over the minor.

Respondents appealed to the circuit court. The circuit court reversed, finding error in the probate court's ruling that it had no authority to deny the Rankins their parental rights to Misty pursuant to § 424a. The circuit court held § 424a grants the probate court discretion and jurisdiction to grant or deny the termination of a limited guardianship and directed the probate court to take into consideration the provisions of the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, or any other statutory provision which would provide a basis for the proper exercise of discretion to determine the "best interests of the child."

This is an issue of first impression. The sole question to be addressed is whether a withdrawal of parental consent to a limited guardianship created under § 424a requires termination of the limited guardianship or affords a probate court the discretion to maintain the guardianship absent parental consent if it is in the best interests of the child. We agree with the probate court and find that withdrawal of parental consent to a limited

guardianship created pursuant to § 424a acts to terminate the guardianship. Section 424a provides:

> (1) The court may appoint a limited guardian for an unmarried minor under this section upon the petition of the parent or parents if both of the following occur:
>
> (a) The parents with custody of the minor consent or, in the case of 1 parent having custody of the minor, the sole parent consents to the appointment of a limited guardian.
>
> (b) The parent or parents voluntarily consent to the suspension of their parental rights.
>
> (2) The suspension of parental rights under this section does not prevent the parent or parents from filing a petition to terminate the guardianship at any time. *Appointment of a limited guardian under this section shall be a continuing appointment and may be terminated by the court upon petition of the parents or sole parent having custody.*

It is clear that a limited guardianship may be created under this section only with parental consent to create the same, § 424(1)(a). Moreover, subsection (2) explicitly states that a parent may file a petition to terminate "the guardianship at any time." Thus, as the guardianship is created only upon the parents' petition and is conditioned upon their consent, we find that the filing of a subsequent petition withdrawing this consent acts to terminate the guardianship.

We reject the argument that the Legislature's use of the word "may" in the last sentence of subsection (2) denotes an intent to grant a probate judge discretion when faced with a petition to terminate a limited guardianship. This sentence deals not with the termination of the "guardianship," the vehicle under which the court attains jurisdiction over the minor, but with the termina-

tion of the appointment of a particular "guardian." Likewise, we reject the circuit court's reference to a standard of discretion which requires inquiry of "the best interests of the minor." The circuit court appears to have applied this standard to § 424a based on its inclusion in § 441, MCL 700.441; MSA 17.5441. However, § 441 deals with the removal or substitution of a particular "guardian," not the guardianship itself.

In finding a legislative intent to permit termination of a limited guardianship upon withdrawal of parental consent, we recognize as valid respondents' concern that children may be removed from good, stable homes and placed with unfit parents, in unfit homes. However, we note the existence of other means to prevent such occurrences. Should the minor's return to the natural parents appear to pose a serious threat to the emotional or physical well-being of the child, nothing in § 424a would prevent the filing of a counterpetition under § 424(2)(b), MCL 700.424(2)(b); MSA 27.5424(2)(b), requesting the appointment of a regular guardian, or under MCL 712A.2(b); MSA 27.3178(598.2)(b) requesting that the minor be made a ward of the court.

Reversed.

WAHLS, P.J., concurred.

R. I. COOPER, J. *(dissenting).* I respectfully dissent.

I would read MCL 700.424a; MSA 27.5424(1) to require the probate court to exercise its discretion when granting a parental petition to either create or terminate a limited guardianship. In both instances the statute states that the court "may" act in accordance with the petition.

I agree that parental consent to both the ap-

pointment of a limited guardian and the suspension of parental rights are required before the probate court may grant the petition to appoint a limited guardian. However, I do not agree that a parental petition for termination of the guardianship operates to erase the consent given at the guardianship's inception. In other words, consent is required before creating a limited guardianship under this section, but continuance of the guardianship does not depend solely upon continued parental consent. To hold otherwise requires changing the statutory language in § 424a(2) from "may be terminated" to "shall be terminated."

I disagree with the majority's position that the last sentence in § 424a(2) refers only to terminating the appointment of a particular guardian. That the "appointment of a limited guardian" refers to both a guardianship itself and to a particular guardian, is supported by the language in § 424a(1) which also uses the phrase "appointment of a limited guardian." Such an appointment obviously creates a "guardianship" while termination of the appointment would, in most cases, also terminate the guardianship.

The statutory language in this section stands in stark contrast to provisions for automatic termination mandated when a person, for whom a testamentary appointment of a guardian is made, files an objection to the appointment. MCL 700.441(4); MSA 27.5441(4). If the Legislature intended the probate court to perfunctorily grant termination under § 424a, it could have provided for an automatic termination upon filing of a petition like that provided in § 441(4).

The fact that so many areas involving child custody and child welfare are treated with great care and concern for the best interests of the minor leads me to conclude that, once a consen-

sual limited guardian is appointed, termination is not automatically required when a parent has a change of heart.

Parents who recognize a need to seek probate court help with a perceived inability to provide for their child should be given credit for consenting to the appointment of a limited guardian rather than passively waiting for someone outside the nuclear family to recognize a deficiency and file a petition based on abuse, neglect or abandonment. However, once the parents have consented to the jurisdiction of the probate court, the statute does not grant an absolute right to terminate the arrangement.

I would hold that § 424a provides the probate court with discretion to grant or deny a petition to terminate a limited guardianship. The proper factors for consideration will differ depending on the circumstances of the guardianship's creation. In some instances, considering the factors listed in the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, would be appropriate. While giving due deference to parental rights, the court should not be absolutely bound to immediately grant a petition for termination when the circumstances merit a different decision.

The probate court's discretion should extend to providing guidelines for reintroducing a young child to her natural parents when, as here, the separation has been of a substantial duration. I believe that recognizing the probate court's discretion in granting petitions to terminate limited guardianships is essential to provide a young child with the stability necessary for normal growth and development.